# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELINO ZEPEDA CASTILLO,<br><br>        Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHIL,[1]<br>Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. EDCV 17-0236 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

Marcelino Zepeda Castillo ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The parties

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## II.

## PROCEDURAL HISTORY

On January 9, 2013, Plaintiff filed an application for DIB claiming his disability began on December 22, 2010. (Administrative Record ("AR") 222-23). Plaintiff's DIB application was denied both initially on May 31, 2013 and upon reconsideration on October 25, 2013. (AR 120-25, 127-32). Plaintiff then requested a hearing which was held before Administrative Law Judge ("ALJ") Dana E. McDonald on January 23, 2015. (AR 74-88). ALJ McDonald held a second hearing on August 20, 2015. (AR 39-73). On September 22, 2015, ALJ McDonald issued an unfavorable decision, finding Plaintiff able to perform light work with some additional limitations. (AR 19-38). On October 29, 2015, Plaintiff requested review of the ALJ's decision before the Appeals Council. (AR 17-18). On December 12, 2016, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (AR 1-7).

# IV.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998)(citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)(citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001)(citing Tackett); 20 C.F.R. §§ 404.1520(b) – 404.1520(f)(1) & 416.920(b) – 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[3] age, education, and work experience.

---

[3] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

4

Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001)(citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000)(citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

## THE ALJ'S DECISION

The ALJ used the above five-step process and found Plaintiff was not disabled. (AR 15-28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date. (AR 24). At step two, the ALJ found Plaintiff had multiple severe impairments: "degenerative disc disease of the lumbar spine, status post laminectomy and decompression; scoliosis; and obesity." (AR 24). At step three, the ALJ found Plaintiff's impairments did not meet or medically equal in whole or in part any of the specific impairments as required under this step of the process. (AR 26). Next, the ALJ determined Plaintiff's residual functional capacity for use in steps four and five. (AR 20). The ALJ found Plaintiff's residual

functional capacity allows him to perform light work with certain exceptions:

> "[H]e requires a sit/stand option at will throughout an eight-hour workday. He can only frequently climb ramps and stairs, balance, kneel, crouch, and crawl. He can occasionally stoop and climb ladders, ropes and scaffolds. He must avoid concentrated exposure to extreme cold, vibration and hazards." (AR 27).

In reaching this residual functional capacity, the ALJ gave no weight to the opinion of Plaintiff's treating doctor, Dr. Mario Luna. (AR 31). Based on this residual functional capacity, at step four the ALJ found Plaintiff is unable to perform his past relevant work. (AR 31). Finally, at step five, the ALJ found there are other jobs in the national economy in significant numbers that Plaintiff can perform. (AR 32). Thus, the ALJ found Plaintiff was not disabled under the Social Security Act from the alleged onset date through the date of the decision. (AR 33).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014)(citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th

Cir. 2001)(citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)(citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

# VII.

# DISCUSSION

Plaintiff contends that the ALJ erred for two reasons. First, Plaintiff argues the ALJ failed to properly weigh the opinion of his treating physician, Dr. Mario Luna. Second, Plaintiff argues the ALJ did not properly assess Plaintiff's credibility. For the reasons discussed below, the Court finds that the ALJ's decision should be REVERSED and this action REMANDED for further proceedings.

## A. The ALJ Failed To Provide Specific And Legitimate Reasons To Reject Plaintiff's Treating Doctor's Opinion

"The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ is required to give weight to the treating physician's subjective judgments, not just the physician's "clinical findings and interpretation of test results." Lester v. Chater, 81 F.3d 821, 832-33 (9th Cir. 1995) (citing Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)).

If the treating doctor's opinion is not contradicted, the ALJ must give "clear and convincing" reasons supported by substantial evidence in the record to reject it. Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). If the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ can only reject the treating doctor's opinion by providing "specific and legitimate reasons supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830.

"Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If there are conflicts between the medical opinions, the ALJ must decide how to resolve them based on how credible they are. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008)(citing Andrews, 53 F.3d at 1039-40); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)). More weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Here, the ALJ failed to give the proper weight to Dr. Mario Luna's opinions as Plaintiff's treating physician. (AR 31). The ALJ mistakenly concluded that Dr. Luna examined Plaintiff only

9

once, when in fact Dr. Luna had examined Plaintiff many times and performed Plaintiff's 2013 back surgery. (AR 31). The ALJ also asserted that Dr. Luna had not reviewed Plaintiff's medical file and that his opinion regarding Plaintiff's abilities was not consistent with Plaintiff's medical history. (AR 31). These reasons are undermined by the record.

The ALJ overlooked the evidence establishing that Dr. Luna was Plaintiff's treating physician. It appears that Dr. Luna left the practice he was in when he performed Plaintiff's 2013 surgery and started his own practice, which may have confused the ALJ in her review of the record. (See AR 424, 746). Dr. Luna performed Plaintiff's decompression surgery and treated Plaintiff before and after the surgery. (AR 419-22). Plaintiff's medical record reflects Dr. Luna treated Plaintiff from September 2012 through November 2013 and from February 2015 through January 2016 (AR 746-761). In her brief, Defendant concedes Dr. Luna treated Plaintiff from September 2012 through November 2013, but does not acknowledge the subsequent treatment. Dr. Luna may have confused matters by writing in the Spinal Impairment Questionnaire that February 24, 2015 was the "Date of first treatment", but this statement was obviously a mistaken entry, overlooking the prior treatment from 2012 to 2013. (AR 721).

Defendant argues that Dr. Luna is still not a treating physician because Plaintiff had not been treated by him in thirteen months. A careful reading of 20 C.F.R. § 404.1527(a)(2) demonstrates that this argument lacks merit. "Treating source

means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). Under this definition, Dr. Luna is Plaintiff's treating physician, as the length of the relationship, the involvement in Plaintiff's surgery, and the frequency of the visits all support a finding that Dr. Luna was Plaintiff's treating physician. See Travizo, supra.

The ALJ weighed other medical opinion evidence in Plaintiff's disability determination. Two of the doctors were also orthopedic specialists. Dr. Bernabe, the consultative examiner and an orthopedic specialist, examined Plaintiff only once. (AR 732-37). Prior to the examination, Dr. Bernabe reviewed three documents: an operative note dated July 1, 2013, a medical progress note dated September 26, 2014, and an X-ray report of the sacrum dated November 24, 2014. (AR 732). It is worth noting that the focus of Plaintiff's back impairments appears to be in his lumbar spine, not his sacrum. Dr. Bernabe did not take any X-rays or MRIs of Plaintiff. (AR 736). His one-time examination is thus not very comprehensive. The ALJ correctly gave little weight to Dr. Bernabe's opinion. (AR 31).

Dr. Schmitter, an orthopedic surgeon and the medical expert, also offered an opinion for consideration. During the hearing before the ALJ, Dr. Schmitter testified he found Dr. Bernabe's conclusions regarding Plaintiff's residual functional capacity to be more credible than Dr. Luna's. As the Court noted, Dr. Bernabe's

11

opinions were problematic and therefore Dr. Schmitter's reliance on those opinions is similarly problematic. (AR 48, 57). In addition, Dr. Schmitter did not examine Plaintiff. The ALJ correctly gave little weight to Dr. Schmitter's opinion. (AR 31).

The ALJ gave the most weight to the opinion of the State agency doctor at the reconsideration level. (AR 31). This State agency doctor, Dr. Bitonte, provided an opinion regarding Plaintiff's limitations on October 24, 2013. (AR 102-16). This was three months after Plaintiff's surgery, but failed to take into account other records with greater detail about Plaintiff's pain levels. This doctor also never examined Plaintiff. For these reasons, and the reasons stated below, it was error for the ALJ to give greater weight to the state agency's opinion over Dr. Luna's opinion on this record.

The ALJ found Dr. Luna's medical opinion concerning Plaintiff's level of pain was inconsistent with the medical file. (AR 31). This finding is not supported by the record. The ALJ cited to isolated pages in the record to support this finding. (AR 31). These page references appear to be very selective rather than a full picture of Plaintiff's pain history. Three of the pages cited list Plaintiff reporting on January 16, March 28 and April 29 of 2014 the pain being better managed with medication. (AR 641, 49, 52). However, a medical record omitted by the ALJ shows that on May 23, 2014, Plaintiff also reported he had severe, burning pain radiating down his right leg. (AR 655). Dr. Luna's medical opinion appears to be consistent over both periods of time he

12

treated Plaintiff.  Dr. Luna provided two medical opinion forms for this case, one in February of 2015 and one in January of 2016, and these opinions are consistent with Dr. Luna's records.  (AR 721-26, 761).  The ALJ failed to provide specific and legitimate reasons to reject the treating physician's opinion.  Accordingly, remand is required.

**B.   The ALJ Failed To Provide Clear And Convincing Reasons To Reject Plaintiff's Testimony As Not Credible**

The ALJ follows a two-step process to determine Plaintiff's credibility regarding subjective pain.  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the ALJ must find whether the Plaintiff provided objective medical evidence that could cause the alleged pain.  Id.  Second, the ALJ must accept the Plaintiff's testimony unless there are clear and convincing reasons to reject it.  Id.  "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  Activities are only relevant to a finding of credibility if they are inconsistent with the alleged limitations, but "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick

v. Chater, 157 F. 3d 715, 722 (9th Cir. 1998). Additionally, "treatment records must be viewed in light of the overall diagnostic record." Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014).

Here, the ALJ found Plaintiff's "allegations concerning the intensity, persistence and limiting effects of his symptoms are less than fully credible." (AR 28). The ALJ found Plaintiff's pain improved with treatment. (AR 28). While this may be partially true, as discussed earlier, this finding does not appear to take the whole record into account, including Dr. Luna's findings as the treating physician.

The ALJ also found Plaintiff's receipt of unemployment benefits was inconsistent with his claim for disability. (AR 28). While this evidence may weigh against Plaintiff's credibility, it is not dispositive on its own. Defendant fails to address the Memorandum from the Chief Administrative Law Judge Frank Cristaudo, included as an exhibit to Plaintiff's memorandum. Judge Cristaudo's memorandum states ALJs must consider receipt of unemployment compensation in their credibility determination. However, because of the lengthy disability determination process, individuals may apply for both. The mere application for unemployment benefits does not defeat a disability benefits application. More information regarding Plaintiff's application for and receipt of unemployment benefits may be helpful. See generally Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999)(finding legal claims under the Social Security Act and

Americans with Disabilities Act can coexist). Accordingly, if the ALJ intends to rely on the unemployment benefits application to reject Plaintiff's credibility, the ALJ must fully develop the record on this issue.

The ALJ also found Plaintiff's travel to Mexico was inconsistent with his alleged physical limitations. (AR 28). Mere travel to a foreign country, however, is not necessarily inconsistent with a claim of disability. Plaintiff's mode of travel and activities while traveling (except that he apparently closed escrow on property) are not contained in the record. (AR 649). Without knowing more details about this trip, Plaintiff's travel to Mexico is not a clear and convincing reason to reject Plaintiff's subjective pain testimony. Compare Howard v. Heckler, 782 F.2d 1484 (9th Cir. 1986)(showing Plaintiff travelled around North America in a motor home but made frequent stops to do exercises and was still found disabled), with Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008)(stating Plaintiff's travel to Venezuela to care for an ailing sister allowed a reasonable inference that he was not as physically limited as he claimed). Without more information regarding Plaintiff's travel, it is not clear how his credibility as to the limiting effects of his impairments is affected.

# VIII.

# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 22, 2017

/S/

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**